OPINION OF THE COURT
David I. Schmidt, J.
Defendants Zipcar, Inc., sued herein as Zipcar New York, Inc. (Zipcar), and Donlen Corporation (Donlen Corp.) move, pursuant to CPLR 3211 (a) (7) and 3212, to dismiss the complaint of plaintiffs Moses Moreau and Inel Duverson (plaintiffs) and all cross claims insofar as asserted against them.
Facts and Procedural History
This action was commenced by plaintiffs to recover damages for personal injuries they sustained in a two-car accident that occurred on April 17, 2012, at approximately 3:15 a.m. on Linden Boulevard, near its intersection with Church Avenue in Brooklyn, New York. Plaintiffs were passengers in the first vehicle, a 2010 Nissan Altima Hybrid, operated by defendant Josaphat. The Nissan Altima was owned by Donlen Corp. Donlen Corp. had leased the Altima to Zipcar, and Zipcar had rented it to Mr. Josaphat, pursuant to its “Zipcar Membership Contract.” Codefendant Khurram Shehzad was the owner, operator, and sole occupant of the second vehicle, a 2002 Ford Explorer. According to the accident report, Mr. Shehzad stated that as he was making a left turn from Linden Boulevard onto Church Street, he was struck by Mr. Josaphat’s vehicle. Mr. Josaphat stated that while he was attempting to make a U-turn onto Linden Boulevard, he was struck by Mr. Shehzad’s vehicle.
Subsequently, plaintiffs commenced this action against defendants by the filing of a summons and verified complaint. The verified complaint alleges that plaintiffs’ injuries were a result of negligence on the part of defendants who were careless, reckless, and negligent in their “ownership, operation, manage *347 ment, maintenance and control” of their respective vehicles in that defendants operated their vehicles “in reckless disregard for the safety of others ... at a dangerous rate of speed under the circumstances . . . [and] failed to steer, maneuver and keep a proper lookout” and that “defendants permitted said vehicle to be improperly and/or defectively equipped with good and sufficient brakes . . . and failed to properly apply the same at the time of the accident.” The basis for plaintiffs’ claim against Zip-car and Donlen Corp. is Vehicle and Traffic Law § 388, which imposes vicarious liability upon the owner of a vehicle for the negligence of the driver.
Issue was joined by Zipcar by service of an amended answer, in which it raised the affirmative defense of the Graves Amendment (49 USC § 30106), which prohibits claims for vicarious liability against automobile rental companies in actions commenced after August 10, 2005.[1] Issue was subsequently joined by codefendants Josaphat/Donlen, and Shehzad, in which they generally denied the allegations of the complaint.
Thereafter, Zipcar’s counsel sent a letter to plaintiffs’ counsel advising that Zipcar was not a proper party to the suit based upon the Graves Amendment, and asked that plaintiffs voluntarily discontinue the action against Zipcar. Plaintiffs, however, did not respond to the request.
Subsequently, Zipcar and Donlen Corp. (hereinafter defendants) made the instant motion to dismiss plaintiffs’ complaint. In support of their motion, defendants argue that the two causes of action alleged against them by plaintiffs, namely, that they are vicariously liable for plaintiffs’ injuries because they owned the Nissan Altima Zipcar vehicle operated by Mr. Josaphat, and that they negligently maintained the vehicle, are both without merit.
With respect to their former argument, defendants contend that the Graves Amendment explicitly prohibits claims for vicarious liability against a motor vehicle rental company such as Zipcar and against vehicle lessors, such as Donlen Corp. In support of this argument, defendants annex the sworn affidavit of Zipcar’s corporate risk manager, Ms. Gail Newman, as well as exhibits maintained by Zipcar, which Ms. Newman states were made in the regular course of Zipcar’s business. Specifically, Ms. *348 Newman avers that she performed a search of Zipcar’s internal records and files, including the rental and maintenance history of the subject Nissan Altima, the title and the lease agreement, and the membership and application records of Mr. Josaphat, a Zipcar member and the operator of the Nissan Altima involved in the subject accident. According to Ms. Newman:
“Zipcar is a membership-based car-sharing company that provides short term car rentals to its members, where members pay fees and usage fees that are billable by the hour or day. Rental rates include gas, insurance, and roadside assistance — as outlined in the membership contract. Members can reserve vehicles online, over the phone, or through Zipcar’s mobile applications. . . .
“Since its incorporation, and continuing to the present, Zipcar is and has been a company engaged in the business of renting motor vehicles as the term pertains to [the Graves Amendment].”
Ms. Newman further states that Zipcar leased the Nissan Altima from Donlen Corp. beginning on or about March 2, 2010; that she has been advised by Zipcar’s attorneys that Zipcar is an “owner” of the subject vehicle as defined by Vehicle and Traffic Law § 128;[2] and that therefore “Zipcar . . . and Donlen Corporation are afforded the protections set forth in the Graves Amendment.” Ms. Newman also avers that a Zipcar membership contract dated January 10, 2012 existed between Zipcar and Mr. Josaphat on the date of the subject accident, which she annexes, and states that Mr. Josaphat’s contract constitutes the entire rental agreement for this particular vehicle, which was made in the regular course of Zipcar’s business.
With respect to plaintiffs’ second cause of action alleging negligent maintenance, Ms. Newman avers that she searched the maintenance records for the Nissan Altima (which she also annexes) and determined that no complaints or issues were brought to Zipcar’s attention with regard to the maintenance or operation of the vehicle during the time from when it came into Zipcar’s possession in March 2010 through the date of the *349 subject accident (Apr. 17, 2010). She also states that “[w]ork performed on the vehicles [sic] is part of the regularly scheduled maintenance program”; that in the 30 days prior to this accident, the Nissan Altima was rented 53 times; that on April 16, 2010, pursuant to Mr. Josaphat’s membership contract with Zipcar, Zipcar rented to Mr. Josaphat a 2010 Nissan Altima Hybrid Sedan with New York State license plate number EYA8816 and vehicle identification number 1N4CL2AP1AC139460; and that Mr. Josaphatis not and has never been an employee or agent of Zipcar. Based upon the foregoing evidence demonstrating that Zipcar and Donlen Corp. are “professional lessors and renters of vehicles” (see Graham v Dunkley, 50 AD3d 55, 57 [2008]), defendants contend that the complaint fails to state a cognizable cause of action against them premised upon vicarious liability.
Defendants also argue that they have made a prima facie showing that the Nissan Altima was free from any mechanical problems from the time it first came into Zipcar’s possession in March 2010 through the date of the subject accident; that the vehicle was regularly maintained; and that it had been rented 53 times in the month preceding the accident with no evidence of any mechanical difficulties. They also note that Mr. Josaphat does not claim that any mechanical problem with the Zipcar vehicle contributed to the accident. Further, relying upon Zwibel v Midway Auto. Group (30 Misc 3d 1232[A], 2011 NY Slip Op 50308[U], *4-5 [Sup Ct, Queens County 2011]), defendants contend that a boilerplate “failure to maintain” allegation contained in most every complaint pertaining to a motor vehicle accident should not be used as a means to avoid Congress’ clear intent in enacting the Graves Amendment to forestall suits against vehicle rental and leasing companies. In addition, they argue that mere speculation that further discovery may reveal evidence that Zipcar failed to adequately maintain the subject vehicle is insufficient to raise a triable issue of fact.
In opposition to defendants’ motion, plaintiffs concede that defendants have annexed “several documents” and an affidavit, although they characterize the affidavit as “self-serving.” In any event, they argue that defendants have not annexed an affidavit from anyone with personal knowledge concerning the condition of the subject Zipcar on the day of the accident. Plaintiffs also assert that it cannot be presumed that the cross claim interposed by Mr. Josaphat against defendants Donlen Corp. and Shehzad has no basis. Specifically, they maintain that *350 defendants’ motion is premature because no discovery has been conducted, and argue that a deposition of Mr. Josaphat may reveal that there was “some mechanical problem with the Zip-car which contributed to causing the collision which injured” them, which would subject defendants to vicarious liability.
Defendant Shehzad also opposes defendants’ motion. Shehzad first argues that the motion is premature. On the merits, he contends, although does not seriously argue, that defendants have failed to annex proof of a valid lease between Donlen Corp. and Zipcar because he concedes it can likely be produced. However, the main focus of his opposition is that a question of fact exists as to whether a rental agreement existed between Zipcar and defendant Josaphat. In this regard, he contends that the “Zipcar Membership Contract indicates that . . . the [subject Zipcar] was not being operated pursuant to a rental agreement but was being used via a vehicle sharing program for this members only organization,” in which case the Graves Amendment would not immunize defendants’ from liability. Stated otherwise, Mr. Shehzad contends that there is a question of fact as to whether membership in Zipcar establishes a periodic rental agreement which would protect Zipcar from liability under the Graves Amendment. In support of this argument, Mr. Shehzad asserts that Zipcar advertises that it is a car-sharing network for members, makes no apparent reference to vehicles being rented to drivers, and represents that only members can drive a vehicle owned by Zipcar.
In reply, defendants reiterate that they have provided a copy of a valid lease agreement between Donlen Corp. and Zipcar for the Nissan Altima (the subject Zipcar) involved in the accident, as attested to by Zipcar’s risk manager in her sworn affidavit. Further, defendants argue that Zipcar is in the business of renting motor vehicles and thus is entitled to the protection of the Graves Amendment. Defendants note that the cases cited by plaintiffs, which refer to Zipcar as a “car-sharing service” are inapplicable since they only pertain to actions for alleged overcharges of fees. Moreover, defendants cite the only reported case discussing the applicability of the Graves Amendment to Zipcar, which found that notwithstanding its advertising referring to itself as a car-sharing service, it is “in ‘the trade or business of renting or leasing motor vehicles’ as those words are traditionally and plainly understood” (Minto v Zipcar N.Y., Inc., NYLJ, June 15, 2010 at 50, col 1 [Sup Ct, Queens County, June 3, 2010, Rosengarten, J., index No. 15401/09], quoting 49 USC *351 § 30106). Finally, defendants argue that they have affirmatively demonstrated that Zipcar properly maintained this “essentially new vehicle,” and that there is no evidence that improper maintenance caused or contributed to the accident.
Discussion
“Vehicle and Traffic Law § 388 (1) makes every owner of a vehicle liable for injuries resulting from negligence ‘in the use or operation of such vehicle ... by any person using or operating the same with the permission, express or implied, of such owner’ ” (Murdza v Zimmerman, 99 NY2d 375, 379 [2003], quoting Vehicle and Traffic Law § 388 [1]). “The statute altered the common-law rule that a vehicle owner could only be held liable for the negligence of a permissive driver under agency or respondeat superior theories” (id., citing Morris v Snappy Car Rental, 84 NY2d 21, 27 [1994]). However,
“on August 10, 2005, Congress amended the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users to preempt the New York Vehicle and Traffic Law to the extent that the federal legislation prohibits imposition of vicarious liability on vehicle lessors for injuries resulting from the negligent use or operation of the leased vehicle (Graves Amendment [49 USC § 30106 (c)])” {Jones v Bill, 10 NY3d 550, 553 [2008]).
The statute provides, in relevant part, that
“Rented or leased motor vehicle safety and responsibility
“(a) In general. An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
“(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
“(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).”
“Consequently, if there is no negligence on the part of an *352 automobile rental company [see § 30106 (a) (2)], that company is not vicariously liable to a motorist injured in a collision with a rented automobile” (Johnson v Alamo Fin., L.P., 2009 WL 4015572, *2, 2009 US Dist LEXIS 109062, *6 [MD Fla, Nov. 19, 2009, No. 6:09-cv-1768-Orl-19GJK]). In this regard, “[w]hile Section 30106(a)(2) only excludes a lessor’s liability ‘if there is no negligence ... on the part of the owner,’ few courts have considered the applicability of this [so-called] savings clause” (2009 WL 4015572, *3, 2009 US Dist LEXIS 109062, *6-7, quoting 49 USC § 30106 [a] [2]). “Nevertheless, courts that have considered the issue express concern that ‘plaintiffs can defeat the spirit of Section 30106 on a motion to dismiss by merely alleging that the leasing company was negligent in maintaining the vehicle’ ” (2009 WL 4015572, *3, 2009 US Dist LEXIS 109062, *7, quoting Colon v Bernabe, 2007 WL 2068093, *5, 2007 US Dist LEXIS 51981, *14-15 [SD NY, July 19, 2007, No. 07 Civ. 3369 (AJP)]). Accordingly, it has been held that “while the express language of Section 30106(a)(2) does create an exception to the Graves Amendment, ‘it is rarely applicable and should be cautiously applied in light of Congress’ clear intent to forestall suits against vehicle leasing companies’ ” (id., quoting Carton v General Motors Acceptance Corp., 639 F Supp 2d 982, 996 [ND Iowa 2009], affd 611 F3d 451 [8th Cir 2010], citing Dubose v Transport Enter. Leasing, LLC, 2009 WL 210724, *4, 2009 US Dist LEXIS 5693, *13-15 [MD Fla, Jan. 27, 2009, No. 6:08-cv-3850-Orl-031DAB]; see also Donohue v Ranieri, 2011 NY Slip Op 32559[U], *11 [Sup Ct, Suffolk County 2011]; Zwibel v Midway Auto. Group, 30 Misc 3d 1232[A], 2011 NY Slip Op 50308[U], *4 [Sup Ct, Queens County 2011]).
Distilling the foregoing, the court finds that defendants Zip-car and Donlen have made a prima facie showing that they are entitled to summary judgment dismissing plaintiffs’ vicarious liability cause of action. In this regard, in support of their motion, defendants have submitted competent evidence demonstrating that they have satisfied all the elements of the Graves Amendment and are therefore entitled to its protection. Specifically, through the sworn affidavit of Ms. Newman, Zipcar’s risk manager, Zipcar has shown that “since its inception, and continuing to the present, [it] is and has been a company engaged in the business of renting motor vehicles” as that term pertains to the Graves Amendment; that Donlen Corp. leased the subject Nissan Altima to Zipcar pursuant to a commercial lease agreement; and that defendant Josaphat operated the subject Zipcar vehicle pursuant to a Zipcar membership contract.
*353 Defendants have also established that there has been no negligence on their part. In this regard, Ms. Newman states that the maintenance records for the subject Zipcar indicate that no complaint or issues were brought to Zipcar’s attention with regard to maintenance or operation of the vehicle during the time when the vehicle came into Zipcar’s possession in March 2010 through the date of the subject accident; that “[w]ork performed on the vehicles [sic] is part of the regularly scheduled maintenance program”; and that in the 30 days prior to this accident, the Nissan Altima (Zipcar) was rented 53 times. The maintenance records annexed to Ms. Newman’s affidavit support her representation in that they only indicate regular service repairs and maintenance were performed on the subject vehicle. Moreover, there is no evidence in these records suggesting that a maintenance issue or mechanical failure caused or contributed to the accident. Thus, the allegation of negligent maintenance does not preclude defendants from claiming immunity under the Graves Amendment.
In opposition, defendant Shehzad and plaintiffs have failed to raise a question of fact to rebut defendants’ prima facie showing. First, Mr. Shehzad does not supply any competent evidence to support his argument that the lease between Zipcar and Donlen Corp. was not the actual lease in effect during the relevant time period. As noted, Ms. Newman states in her sworn affidavit that the lease she annexed constitutes the actual lease. Moreover, it is notable that the second page of the maintenance records annexed to Ms. Newman’s affidavit indicates that Donlen Corp. is the lessor.
Mr. Shehzad also argues, in effect, that a question of fact exists as to whether the membership contract entered into by Mr. Josaphat with Zipcar constitutes a periodic rental agreement which suffices to shield Zipcar from vicarious liability under the Graves Amendment. The court finds this argument unpersuasive, and concurs with the reasoning set forth in Minto v Zipcar N.Y., Inc. (NYLJ, June 15, 2010 at 50, col 1 [Sup Ct, Queens County, June 3, 2010, Rosengarten, J., index No. 15401/09]), which found that Zipcar was “in the trade or business of renting or leasing motor vehicles” and was therefore entitled to the protection of the Graves Amendment. In Minto, the plaintiff alleged that his vehicle was rear-ended while stopped at a red light by a Zipcar vehicle driven by the defendant, pursuant to the same Zipcar membership contract at issue here. The plaintiff moved for summary judgment, arguing that Zipcar, as an
*354 “owner” under Vehicle and Traffic Law § 128,[3] was vicariously liable under Vehicle and Traffic Law § 388 (1). Finding that Zip-car was in fact an “owner” under the Vehicle and Traffic Law, subjecting it to vicarious liability, the court went on to address the defense raised by Zipcar, namely, whether it was shielded from vicarious liability by the Graves Amendment. Beginning with the statutory text, the court first noted that the statute did “not define ‘the trade or business of renting or leasing motor vehicles,’ or its constituent terms ‘renting’ and ‘leasing’ ” (id.), but that
“[t]he consistent and established understanding of ‘leasing’ is the ‘transfer of the right to possession and use of goods for a term in return for consideration.’ UCC 2-A-103(j); see also First Franklin Sq. Assocs., v. Franklin Sq. Prop. Account, 15 A.D.3d 529, 532 [2d Dept. 2005] (‘The central distinguishing characteristic of a lease is the surrender of absolute possession and control of property to another party for an agreed-upon rent.’); Black’s Law Dictionary (8th Ed., 2004) (‘To grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration.’) Black’s Law Dictionary defines ‘rent,’ used as a noun, as the ‘[consideration paid, usu. periodically, for the use or occupancy of property (esp. real property).’ (8th Ed., 2004.) ‘When used as verbs, the words “lease” and “rent” are synonymous.’ Zizersky v. Life Quality Inc., 21 Misc. 3d 871, 878 [N.Y. Sup. 2008] (citing Richards v. Princeton Ins. Co., 178 F Supp 2d 386, 395 [SD NY 2001][4]).”
*355 Applying the common usage of the terms “lease” and “rent,” the court held that
“Zipcar’s contract with [the defendant] allowed him to ‘use Zipcar’s vehicles, to the extent available, in accordance with the terms of [the Zipcar membership contract] and subject to paying the corresponding fees.’ . . . This bargain use of a car in exchange for a fee appears little different from ‘traditional rental car[ ]’ companies, notwithstanding Zipcar’s marketing statements that contrast it with those companies” (emphasis added).
Thus, the court found that Zipcar was “in ‘the trade or business of renting or leasing motor vehicles’ as those words are traditionally and plainly understood” (id., quoting 49 USC § 30106).
The court also held that having made its finding based upon the statutory language, it was not required to look further (Jones, 10 NY3d at 555). Nevertheless, the court addressed the plaintiffs argument that the statute should be construed narrowly because, having been injured by the negligent operation of a motor vehicle, she was entitled to recourse from a financially responsible defendant. Specifically, the court discussed Zizersky v Life Quality Motor Sales, Inc. (21 Misc 3d 871 [Sup Ct, Kings County 2008]), upon which plaintiffs here rely. In Zizersky, the plaintiff was driving her car when it collided with a BMW driven by the individual defendant. The BMW was owned by either of two BMW defendants and had been delivered to the individual defendant by defendant Life Quality, a BMW dealer, for use by the individual defendant while her vehicle was being serviced by the dealer (id. at 872). All three BMW defendants moved for an order dismissing the complaint against them based upon the Graves Amendment (id.). The court rejected the argument of the BMW defendants that the so-called right to repair the vehicle rendered the loaner vehicle “rented” or “leased” for purposes of the Graves Amendment, and found that the loan of the vehicle was a “simple bailment” (id. at 876). Notably, in making this determination, the court found that “[t]he central distinguishing characteristics of a lease is the surrender of absolute possession and control of property for an agreed-upon rent” (id. at 878 [citations and internal quotation marks omit *356 ted]). Further, under the circumstances presented, the court held that interpreting the statute to include “loaner” vehicles as “rented” or “leased” would not aid the purposes of the statute (id. at 879), namely, “reduction of insurance costs that will in turn result in a reduction of consumer prices and allow more lessors to remain in business” (Hall v ELRAC, Inc., 52 AD3d 262, 262-263 [2008]). As such, the court found that the statute did not act to protect defendants from the plaintiffs vicarious liability claim and denied defendants’ motion, noting that the “the determined scope of the Graves Amendment will undermine the policy of the State’s Vehicle and Traffic Law” and thus sought “clearer indication from Congress” before interpreting the statute more broadly (Zizersky, 21 Misc 3d at 880).
The court in Minto (Sup Ct, Queens County, index No. 15401/09) compared Zipcar’s claim (for protection under the Graves Amendment) to the claims rejected in Zizersky, and found that unlike the driver of the loaner vehicle in Zizersky, “Zipcar members pay for their use of vehicles . . . competes with traditional car-rental companies and serves a similar consumer need” {id.). As such, the Minto court held that subjecting Zipcar “to vicarious liability, unlike auto mechanics giving temporary loaners to their customers, will thus affect interstate commerce and falls within Congress’s Constitutional authority to regulate to the same extent as those traditional companies [which rent automobiles]” {id.). Although the court recognized that application of the Graves Amendment to Zipcar would frustrate the State’s policy by denying an allegedly injured plaintiff a viable cause of action, it held that “neither the statutory language nor its intent allow another conclusion” {id.). Accordingly, the court dismissed the plaintiffs claim, searched the record, and granted defendants summary judgment {id.).
The reasoning applied by the court in Minto applies to this case as well. As the Minto court noted, the Zipcar membership contract provides, among other things, that “[a] Member may only use Zipcar’s vehicles, to the extent available, in accordance with the terms of this Contract and subject to paying all applicable fees and charges” (contract ¶ 4.1 [emphasis added]). Moreover, although the “driving/membership plan includes an annual or monthly fee” — presumably one of the main features which makes it a “car-sharing service” — the contract further provides that
“[t]he member is required to pay all fees and costs incurred . . . when due, including, without limita *357 tion, application fees, driving record/insurance verification fees, membership fees . . . driving charges (including but not limited to mileage overage and surcharge and/or toll fees), sales and other taxes and levies, and other costs and fees as provided in the Rules and Schedules and the Member’s driving/membership plan” (id. ¶ 4.2).
Inasmuch as Zipcar is in the business of allowing “use of [its] car[s] in exchange for a fee” just like “traditional rental car[ ]” companies (Minto, Sup Ct, Queens County, index No. 15401/09), this court also finds that they must be considered “in the trade or business of renting or leasing motor vehicles” under the plain words of the statute (id.). Similarly, in light of the statute’s purpose, the statute is properly interpreted to apply to Zipcar (id.; Hall, 52 AD3d at 263), despite the fact, as Mr. Shehzad notes, that it is a car-sharing service and has been referred as such in two of the cases he cites (see Blay v Zipcar, 716 F Supp 2d 115 [2010]; Reed v Zipcar, Inc., 2013 WL 3744090, 2013 US App LEXIS 14471 [1st Cir, July 17, 2013]).
Further, as noted, plaintiffs rely upon Zizersky (21 Misc 3d 871), as well as Murphy v Pontillo (12 Misc 3d 1146 [Sup Ct, Nassau County 2006]), to support their argument that the circumstances here are analogous to loaner vehicles cases which have been the subject of litigation under the Graves Amendment. However, for reasons expounded upon above, these cases are distinguishable from this matter as they do not involve the use of a vehicle for a fee, nor do they implicate the policy considerations which underlie the amendment. As indicated, the amendment did not apply to the defendants in Zizersky because the defendants supplied a “loaner” vehicle to the lessee without charge while the lessee’s car was being serviced, and thus the loaner vehicle could not be deemed to have been “rented” or “leased.” Similarly, in Murphy, there was insufficient evidence to determine as a matter of law that a car dealership was “a business in the business of vehicle leasing or renting, or that the defendant . . . leased or rented the van involved in the accident” (id. at 1148) because the rental agreement was entitled “Renter/Loaner Agreement” and there was no proof that the renter had ever paid for the use of the vehicle. Such is not the case here, where Zipcar provides vehicles for use in exchange for scheduled fees, and the member is “required to pay all fees and costs incurred . . . when due, including, without limitation . . . driving charges.”
Finally, as to the claim by plaintiffs that they should be afforded the opportunity to depose Mr. Josaphat with respect to *358 plaintiffs’ negligent maintenance cause of action, and the argument of defendant Josaphat that “a party should be permitted a reasonable opportunity for discovery,” “under the circumstances of this case, [defendants] ha[ve] demonstrated that there can be no significant dispute regarding maintenance of the vehicle” (Zwibel v Midway Auto. Group, 30 Misc 3d 1232[A], 2011 NY Slip Op 50308[U], *4 [Sup Ct, Queens County 2011]). As noted above, defendants have established, through the sworn affidavit of Zipcar’s risk manager, “that there were no complaints regarding the maintenance of the [subject Zipcar],” and plaintiffs have “failed to allege facts sufficient to show that [Zipcar] was culpable for improper maintenance of the vehicle” (id.). Thus, in this case, “[t]he plaintiff[s’] hope that further discovery [will] reveal the existence of triable issues of fact regarding maintenance of the vehicle is insufficient to delay determination the motion” (id.). Moreover, this case is distinguishable from other cases in which defendant/movants submitted affidavits from loss managers in support of motions to dismiss which were, for various reasons, found to be lacking, and where the courts found that these defendants had made “no showing that, as a matter of law, a claim for negligent maintenance does not survive the Graves Amendment” and made “no showing that, as a matter of fact, [they] properly maintained the subject vehicle[s]” (Luma v ELRAC, Inc., 19 Misc 3d 1138[A], 2008 NY Slip Op 51062[U], *5 [Sup Ct, Kings County 2008] [motion to dismiss pursuant to CPLR 3211 (a) (7) based upon the Graves Amendment denied where documents attached to affirmation of defense counsel were neither acknowledged nor accompanied by certificate of conformity, were unauthenticated and inadmissible, and affirmation of defendant’s loss control manager lacked proper foundation]; Merine v Darden, 26 Misc 3d 1205[A], 2009 NY Slip Op 52668[U], *7 [Civ Ct, Queens County 2009] [motion to dismiss pursuant to CPLR 3211 (a) (7) based upon the Graves Amendment denied where defendants failed to attach all pleadings and in any event, affidavit of defendant’s regional loss manager insufficient to authenticate the rental agreement between defendant lessor and defendant driver as a business record]; compare Vedder v Cox, 18 Misc 3d 1142[A], 2008 NY Slip Op 50408[U] [Sup Ct, Nassau County 2008] [motion to dismiss pursuant to CPLR 3211 (a) (7) based upon the Graves Amendment granted where, among other things, affidavit from defendant’s regional loss control manager stated that the affiant had searched the maintenance records for the subject vehicle, found *359 that no maintenance or repairs had been performed, that there had been no complaints from renters, and that the vehicle had been inspected for damages and performance problems between rentals]). In sum, plaintiffs claim that disposition of defendants’ motion is premature must fail where, as here, plaintiffs’ have “failed to offer an evidentiary basis to suggest that further discovery may lead to relevant evidence” (Zwibel v Midway Auto. Group, 30 Misc 3d 1232[A], 2011 NY Slip Op 50308[U], *5 [Sup Ct, Queens County 2011], citing Woodard v Thomas, 77 AD3d 738 [2010]).
In view of the foregoing, the motion of defendants Zipcar and Donlen Corp. for summary judgment dismissing the complaint and all cross claims against it is granted.

. However, a claim based upon negligent maintenance, also alleged by plaintiffs, is not barred by the Graves Amendment because it does not absolve leasing companies of their own negligence (see Collazo v MTA-New York City Tr, 74 AD3d 642 [2010]).

. Vehicle and Traffic Law § 128 provides as follows:
“A person, other than a lien holder, having the property in or title to a vehicle or vessel. The term includes a person entitled to the use and possession of a vehicle or vessel subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or vessel having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.”

. Vehicle and Traffic Law § 128 provides as follows:
“A person, other than a lien holder, having the property in or title to a vehicle or vessel. The term includes a person entitled to the use and possession of a vehicle or vessel subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or vessel having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.”

. “Etymologically and legally, average persons commonly understand that a charter is a synonym for, or at minimum a subset of, a rental, with the only difference being that a charter connotes some exclusivity of purpose to the rental” CRichards v Princeton Ins. Co., 178 F Supp 2d 386, 395 [SD NY 2001]).
“Thus, it would be inappropriate for this Court to hold that, by artificially labeling the hiring of a bus and driver as a ‘charter’ *355 rather than a ‘rental,’ the objectively reasonable expectation of the insured would preclude application of the Automobile Exclusion and thereby extend coverage into the distinct area of automobile policy underwriting” (id.).